No. 124,199

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ALLEN MICHAEL HURST,
*Appellant*.

SYLLABUS BY THE COURT

1.

This court uses the four-part *Barker* balancing test to determine whether a delay in appellate proceedings has violated a defendant's due process rights under the United States Constitution. The court must consider the (1) length of delay, (2) reason for the delay, (3) defendant's assertion of their right, and (4) prejudice resulting from the delay. *Barker v. Wingo*, 407 U.S. 514, 530, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972).

2.

A defendant's writings, motions, statements to the court, and other communications can support an assertion of their constitutional right to a speedy trial, and no particular language or citation to a specific legal principle is required.

3.

The prejudice factor of the *Barker* balancing test carries crucial weight in determining whether a defendant's due process rights were violated by a delay in the appellate proceedings.

1

Appeal from Leavenworth District Court; MICHAEL D. GIBBENS, judge. Opinion filed November 4, 2022. Affirmed.

*Joseph A. Desch*, of Law Office of Joseph A. Desch, of Topeka, for appellant.

*Todd Thompson*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before CLINE, P.J., ISHERWOOD and HURST, JJ.

HURST, J.:  In a case that spans many years and multiple states, Allen Michael Hurst appeals his conviction asserting that his lengthy direct appeal process has deprived him of his due process rights. While this court does not dispute the inexplicable delay, Hurst presents no other errors, in either his underlying plea or the resulting sentence, that were impacted or otherwise resulted from this delay. Although Hurst is correct that he experienced an inexcusable and inordinate delay, he has made no showing of constitutionally cognizable prejudice resulting from that delay.

FACTUAL AND PROCEDURAL BACKGROUND

The underlying facts, which are reminiscent of a screenplay, are relevant to the procedural posture of this case. On May 10, 2013, Allen Michael Hurst escaped from Lansing Correctional Facility in Lansing, Kansas, with two fellow prisoners. During their escape, Hurst and one other prisoner stole a car in Kansas and eventually crossed the state line into Missouri where they engaged in a high-speed car chase. Hurst and his fellow escapee shot at officers in Missouri who attempted to stop the vehicle. Eventually, Hurst and his accomplice crashed the stolen vehicle and fled the scene on foot, where they broke into a nearby house and barricaded themselves inside. An armed standoff with a SWAT team ensued before the escapees were finally apprehended. Hurst received a 20-year sentence in Missouri for the crimes he committed in that state following his escape, and his codefendant received a 128-year sentence. See *State v. Gilbert*, No. 117,953,

2

2018 WL 4939094 (Kan. App. 2018) (unpublished opinion); *State v. Gilbert*, 531 S.W.3d 94, 97 (Mo. Ct. App. 2017).

Hurst was also charged in Kansas with aggravated escape from custody and, in a separate case, felony theft, and criminal possession of a firearm for his actions during the prison break in 2013—but he remained in custody in Missouri for about five years with no proceedings in Kansas. In April 2018, Hurst filed a Uniform Mandatory Disposition of Detainers Act request seeking disposition of his Kansas charges and he was transported across the border to face those charges. Shortly thereafter, on June 22, 2018, Hurst pled no contest to the aggravated escape from custody charge in exchange for the State's agreement to dismiss the other case. At sentencing, Hurst's criminal history score was determined to be A and the district court sentenced him to 130 months' imprisonment. The court further ordered that Hurst serve the Kansas sentence consecutive to the 20-year sentence he was already serving in Missouri and the 25 months remaining on the Kansas sentence he was serving when he had escaped prison. On August 3, 2018, Hurst's trial counsel timely filed a notice of appeal.

A week after Hurst's counsel filed his notice of appeal, the district court appointed the Kansas Appellate Defender's Office (ADO) to represent Hurst on appeal. Approximately 14 months later, on October 24, 2019, the ADO moved to withdraw from the case because that office had previously represented Hurst's codefendant and believed it was conflicted out of representing Hurst. The motion noted that the ADO had only learned about its appointment to represent Hurst the week prior—on October 17, 2019. The ADO's withdrawal was granted the next week, but—for reasons which remain unclear to this court—the district court did not appoint substitute counsel at that time. It appears the ADO may have been appointed to represent Hurst again after its first withdrawal, as the record contains a second motion to withdraw filed in October 2020 due to the same conflict issue.

On August 19, 2020, Hurst wrote to the Leavenworth County Court Clerk, requesting "help or advice in the matter of [his] appeal," noting that he had not been contacted about the matter for over two years. Then in September 2020, Hurst filed a "Motion To Dismiss" based on the delay in his appeal and requested that his conviction be "overturned and dismissed due to violation of Due Process and Constitution of Rights being violated." That same month, Hurst filed two additional motions for dismissal in which he contended that he had received ineffective assistance of counsel based on the delay in the appellate process. Hurst explained that "[b]ecause of said acts, the Defendant, me, has not been able to move forward with the above case, and places me, the Defendant, under duress." The State promptly opposed Hurst's request for dismissal, noting that dismissal of Hurst's sentence or conviction was not an appropriate remedy regardless of any delay. Hurst then filed a "Petition To Court," requesting the district court to review his motion and notify him of its decision.

On November 30, 2020, the district court appointed Hurst new, conflict-free counsel for his appeal. Three months later, the court held a hearing on Hurst's pro se motions to dismiss, during which Hurst argued that he had received deficient performance from the various attorneys appointed to represent him and had been prejudiced because his "appeal could have been received" and he "could know what [his] future outcome would be." Ultimately, the district court denied Hurst's motions, explaining:

> "The Court has reviewed this file and it appears that Mr. Lee had been counsel here in the district court, and that upon conclusion of it he had filed a notice of appeal. And then he had withdrawn so the Appellate Defender could be appointed and that the Appellate Defender was actually appointed. And all of that was done timely and properly except the Appellate Defender then determined that they had a conflict of interest 'cause they were representing a co-defendant and so they withdrew. When they withdrew it looks like the ball got dropped and replacement counsel didn't get appointed.

4

"And then when this motion was filed and it was brought to the Court's attention, that's when new counsel was appointed, Mr. [] was appointed. I think initially the Appellate Defender was reappointed and they continued to decline representation, then Mr. [] was appointed.

"But either event, the proper remedy, though, here, if there is one, is not a dismissal. . . . I'm not sure that there's any remedy for it. It was delayed and—and—and that's what happened."

Some months after the court denied Hurst's pro se motions to dismiss, on July 28, 2021, his new counsel moved to docket Hurst's appeal out of time—this court granted the motion on August 11. However, less than two months later, on September 20, 2021, Hurst's attorney withdrew because of a conflict of interest and breakdown of the attorney-client relationship, which is evinced by a testy exchange of letters. The next month, the district court appointed Hurst new appellate counsel who finally filed a brief on Hurst's behalf in January 2022—about three and a half years after his notice of appeal.

## DISCUSSION

On appeal, Hurst argues only that the lengthy delay in getting his appeal before this court deprived him of his due process rights under the Fifth and Fourteenth Amendments to the United States Constitution. Hurst asserts no other claim of any deficiency in his plea or the sentence imposed in this case—he merely argues that he was denied due process because of the objectively lengthy time between the filing of his notice of appeal and the filing of his appellate brief.

The United States Constitution affords criminal defendants due process rights on appeal. "[I]f a State has created appellate courts as an integral part of its system for finally adjudicating the guilt or innocence of a defendant, the procedures employed in the appeal process must comport with the demands of the Due Process and Equal Protection Clauses of the Constitution." *State v. Bussart-Savaloja*, 40 Kan. App. 2d 916, 920, 198

5

P.3d 163 (2008), *abrogated on other grounds by City of Kingman v. Ary*, 312 Kan. 408, 475 P.3d 1240 (2020). The United States Supreme Court established a balancing test—known as the *Barker* balancing test—to determine whether a trial delay has violated a criminal defendant's right to a speedy trial under the Sixth Amendment to the United States Constitution. *Barker v. Wingo*, 407 U.S. 514, 530, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972).

Although *Barker* addressed a criminal defendant's right to a speedy trial under the Sixth Amendment, the Tenth Circuit Court of Appeals has since adopted the *Barker* balancing test for determining whether a delay in the appellate process has violated a defendant's due process rights. *Harris v. Champion*, 15 F.3d 1538, 1558-65 (10th Cir. 1994). In the appellate context, the Tenth Circuit modified the fourth factor of the test—prejudice to the defendant—by expanding the prejudice element as fully explained below. A panel of this court has adopted the *Harris* formulation of the *Barker* balancing test when considering whether a delay in the appellate process has violated a defendant's constitutional due process rights, and this panel finds that to be the appropriate analysis. See *Bussart-Savaloja*, 40 Kan. App. 2d at 921.

In determining whether Hurst's appellate delay violated his constitutional due process rights, this court must balance the following factors: (1) length of the delay; (2) reason for the delay; (3) the defendant's assertion of their rights; and (4) prejudice to the defendant. See *Barker*, 407 U.S. at 530.

*The Length of Appellate Delay*

Here, the first factor in the balancing test weighs heavily in favor of Hurst. Around three and a half years elapsed from when Hurst filed his notice of appeal in August 2018 to when his counsel filed his appellate brief in January 2022. This court has held that only the passing of an "inordinate amount of time" triggers due process concerns. *State v.*

6

*Delacruz*, 52 Kan. App. 2d 153, 165, 364 P.3d 557 (2015), *rev'd on other grounds* 307 Kan. 523, 411 P.3d 1207 (2018); *Bussart-Savaloja*, 40 Kan. App. 2d at 921 ("If inordinate delay cannot be shown, we need not inquire into the other factors."); see also *Barker*, 407 U.S. at 530 ("The length of the delay is to some extent a triggering mechanism."). A two-year delay from the notice of appeal to final adjudication will be considered presumptively excessive, requiring examination of the remaining factors. *Bussart-Savaloja*, 40 Kan. App. 2d at 921-22; see *Harris*, 15 F.3d at 1559-60.

Although the filing of a notice of appeal starts to run the clock, Kansas courts have used different measures for when a delay officially ends, including the docketing of the appeal, the filing of an appellate brief, or the resolution of the case by this court. See *Delacruz*, 52 Kan. App. 2d at 164-65 (measuring delay from filing of defendant's notice of appeal to when appeal was docketed); *Bussart-Savaloja*, 40 Kan. App. 2d at 921-22 (measuring delay from filing of defendant's notice of appeal to actual adjudication); *State v. Ballou*, No. 107,155, 2013 WL 646485, at *3 (Kan. App. 2013) (unpublished opinion) (measuring delay from the filing of defendant's notice of appeal to the filing of his appellate brief). Here, the length of delay was presumptively unreasonable regardless of the measuring stick. Even by the shortest standard—stopping the clock when Hurst's appeal was docketed—Hurst suffered a 27-month delay. If measured from when Hurst's appellate brief was filed, it was about a 40-month delay and both delays weigh in favor of Hurst's contention that his due process rights were violated.

*The Reason for the Inordinate Delay*

Having found a presumptively inordinate delay, this court must determine the reason for the delay. If the delay was purposefully caused, this factor weighs heavily against the government. But if the delay resulted from a neutral reason, such as overcrowded courts, this factor carries less weight. No matter the reason for the delay, "[t]he ultimate responsibility rests with the government rather than with the defendant."

7

*Bussart-Savaloja*, 40 Kan. App. 2d at 922 (citing *Barker*, 407 U.S. at 531). In fact, "reasons such as lack of funding, briefing delay by court-appointed attorneys, and mismanagement of resources by public defender offices are not considered acceptable excuses for inordinate delay." 40 Kan. App. 2d at 922 (citing *Harris*, 15 F.3d at 1562).

Hurst does not allege the delay was purposeful, and this court finds no intentional delay or subterfuge by the State to orchestrate the delay. Hurst addresses the initial delay from the time he filed his notice of appeal to when the court appointed him replacement counsel after the ADO withdrew from his case—about 28 months. After its first appointment as Hurst's appellate counsel, the ADO waited 14 months to request to withdraw from the representation. However, the ADO explained that it was not made aware of its appointment until the week prior to moving to withdraw. At that point, after more than a year-long delay, the district court failed to appoint another attorney to represent Hurst for another 13 months. There is no explanation for this delay beyond the district court's comment that "the ball got dropped."

The State argues that the delays caused by the ADO's conflict of interest should not be assessed against it and that Hurst is somehow responsible for much of the total delay. The State apparently contends that Hurst should have taken some action to obtain counsel sooner or alert the court and State of the delay—yet could not identify the appropriate mechanism for Hurst to take such action. This court disagrees with the State and finds its position untenable. The State attempts to avoid accountability for the delay because it was not purposeful and by pointing responsibility onto the ADO and Hurst. This attempt contradicts the governing speedy trial caselaw as well as logic, particularly when a defendant is relying on the district court to appoint him counsel and has no other access to an attorney.

More than a decade ago, the *Bussart-Savaloja* panel explained that "[p]roblems in the prompt appointment of appellate counsel and notification of the appointment have

8

been a persistent problem to our court." 40 Kan. App. 2d at 923. Based on Hurst's experience, this problem persists. After Hurst filed his notice of appeal in August 2018, his appeal was not docketed by appointed counsel for three years. Most of this delay was caused by failures in the timely appointment of conflict-free counsel—failures for which Hurst has no culpability. The State has identified no procedural rule or process that Hurst—as an indigent, incarcerated defendant—failed to follow in obtaining conflict-free counsel. Yet, this court finds no intentional delay by the State and thus this factor only weighs slightly in favor of Hurst and the finding of a due process violation.

*Hurst's Assertion of His Rights*

Hurst first contacted the district court about the delay in the appellate process through a letter in August 2020—two years after his sentence and the filing of his notice of appeal. In the letter, Hurst explained that in October 2019 he tried to obtain information about the delay from his trial counsel but received no response. Hurst asked the court to grant him "help or assistance in the matter of [his] appeal" because he had "heard nothing in 2 years." He then filed several motions to dismiss based on the delay in the appellate process and requested that "this conviction be overturned and dismissed due to violation of Due Process and Constitution of Rights being violated."

The State contends that through his motions Hurst failed to request a prompt resolution of his appeal, but merely requested a dismissal of the underlying conviction and sentence. The Kansas Supreme Court has noted that "'an assertion that charges be dismissed for a speedy trial violation is not a value protected under *Barker*." *In re Care & Treatment of Ellison*, 305 Kan. 519, 538, 385 P.3d 15 (2016). Despite Hurst's pro se request for an inappropriate remedy, he did invoke his due process rights, albeit without citing the specific right to an expeditious appeal. Hurst's pro se motions and letter to the court make clear that he brought the unreasonable delay of his appeal to the attention of the district court and sought a remedy, which is an adequate assertion of his rights. This is

9

particularly true when the defendant, as here, has requested appointment of counsel to pursue his rights and such appointment has not occurred, requiring him to assert his rights without counsel.

*The Prejudicial Effect of the Inordinate Delay*

Finally—and most importantly—this court considers whether Hurst suffered prejudice from the objectively unreasonable delay. In determining the prejudice to defendant, this court examines whether the defendant suffered (i) oppressive incarceration pending appeal; (ii) constitutionally cognizable anxiety; or (iii) impairment of the ability to present a defense upon a retrial or reversal. *Bussart-Savaloja*, 40 Kan. App. 2d at 920 (citing *Harris*, 15 F.3d at 1559). Hurst focuses his argument on the second factor—constitutionally cognizable anxiety while awaiting appellate resolution.

Before analyzing Hurst's anxiety stemming from the delay, this court notes that Hurst has suffered no prejudice that falls within the other two categories. First, Hurst suffered no oppressive incarceration pending the resolution of this appeal because he has not even begun to serve the 130-month sentence resulting from his Kansas conviction. His Kansas sentence was ordered to run consecutive to his 20-year sentence in Missouri as well as the 25 months remaining on the Kansas sentence he was serving when he escaped prison in 2013. Thus, Hurst will not begin serving his present sentence for about 17 years. Accordingly, any remedy sought through his appeal to this court—including his impermissible request for "dismissal" of his conviction—would not affect Hurst until he completes his other sentences.

Similarly, the delay in Hurst's appeal has not prejudiced or impaired his grounds for relief or any defenses he could raise if this court were to reverse and remand any aspect of his conviction or sentence. While Hurst's decision to enter a plea agreement limits his grounds for appeal—he has asserted no grounds other than the deprivation of

his due process rights due to the delay in the appellate process. He alleges no error and presents no other grounds for reversal or relief stemming from his plea or sentencing in this case. By asserting no other basis for appellate relief, Hurst essentially admits that he has suffered no prejudice or impairment of any grounds for direct appeal or potential defenses if his case were reversed and remanded. Additionally, by not challenging any aspect of his underlying plea or sentence, he has waived any potential argument of infirmity in the underlying proceedings from which this direct appeal derives. See *State v. Arnett*, 307 Kan. 648, 650, 413 P.3d 787 (2018) (issues not briefed are deemed waived and abandoned).

Hurst's only prejudice argument centers on the anxiety subfactor. Hurst contends that he has suffered anxiety about the outcome of his case and felt as if he were abandoned during the delay in the appellate process. However, to establish the requisite prejudice stemming from anxiety, Hurst must make a "particularized and substantial showing of anxiety distinguishable from anxiety suffered by other similarly situated defendants." *Bussart-Savaloja*, 40 Kan. App. 2d at 925. Therefore, the general anxiety which Hurst claims he suffered during the delay in his appeal is insufficient to demonstrate prejudice. In *Harris*, the Tenth Circuit explained:

> "A petitioner has no reason to be anxious or concerned about the time it takes to adjudicate an appeal that is without merit. Therefore, to establish prejudice resulting from anxiety, a petitioner must once again assert a colorable state or federal claim that would warrant reversal of the petitioner's conviction or reduction of sentence to an amount of time less than that taken to adjudicate the appeal." 15 F.3d at 1565.

Hurst asserts no potentially colorable claims under state or federal law that would warrant reversal of his conviction or reduction of his sentence. His only basis for relief is the inordinate delay in his appeal, meaning he cannot suffer legally prejudicial anxiety because he has no meritorious appellate claim. Moreover, even if he asserted a potentially meritorious claim, he would not recognize that benefit for about 17 years, making any

11

increased anxiety from the delay in his appeal unreasonable. Hurst's frustration, anxiety, and feeling of abandonment based on the lack of information he received during the delay in his appeal is unfortunate. This court does not condone or excuse the delay in this case. But under the unique facts of Hurst's case, he could not have suffered the type of constitutionally cognizable anxiety that amounts to prejudice. In sum, Hurst has failed to show that he suffered any prejudice from the delay in his appeal.

Although three of the four *Barker* balancing test factors weigh in favor of finding that the delay in Hurst's appeal violated his due process rights—his inability to demonstrate prejudice outweighs all the other factors. Defendants cannot establish a constitutional due process violation from a delay in their direct appeal without showing that they suffered some amount of prejudice from the delay.

CONCLUSION

While Hurst unquestionably experienced an inordinate delay during the appellate process, he suffered no additional incarceration, unique anxiety, or impairment of his ability to present a defense. In other words, he did not suffer any constitutionally cognizable prejudice as a result of the delay. Accordingly, this court finds that the delay in the appellate process did not deprive Hurst of his due process rights.

Affirmed.