No. 44,723

THOMAS P. DUGGAN and ALVIN NOVAK, *Appellants,* v. EDWARD NAVART, HERBERT HIEBERT and O. F. HERBERT, County Commissioners of Marion County, Kansas; BURNACE POWELL, County Clerk of Marion County, Kansas, and KATHRYN SCHIMPF, County Treasurer, Marion County, Kansas, *Appellees.*

(426 P. 2d 153)

Opinion filed April 8, 1967.

*Edward J. Costello,* of Tampa, argued the cause, and was on the brief for the appellants.

*Dean C. Batt,* county attorney, argued the cause, and was on the brief for the appellees.

The opinion of the court was delivered by

O'CONNOR, J.: This is an appeal from the dismissal of a class action brought by the taxpayers of Rural High School District No. 4, Marion County (appellants), against the defendants (appellees) to recover taxes paid under protest that had been levied pursuant to the provisions of K. S. A. 72-5715.

The basic issue presented is whether or not the appellants' taxable tangible property was properly subjected to a levy for the "special high-school equalization fund" authorized by the statute.

The facts are undisputed.

Late in 1964 and early in 1965 Marion county sought to unify its school system. A proposed county unification plan was submitted to the voters, and rejected. Each existing district, therefore, was left to solve its own unification problem. In January 1965, District No. 4 (hereafter referred to as Tampa) voted to unify with Joint Rural High School District No. 11 (hereafter referred to as Centre)

as of July 1, 1966. Subsequently, Tampa learned that the unification could be effected on July 1, 1965, and in April voted not to conduct school for the 1965-66 school year. A tentative agreement was made between the Tampa and Centre boards that if both districts did not approve unification as of July 1, 1965, Centre would accept the students from Tampa if Tampa, at its own expense, would provide its students transportation to Centre and pay a $500-per-student-per-year tuition.

The annual meeting of each district was to be held on the same date. Neither district knew what action would be taken by the other regarding unification. Tampa, at its meeting, in addition to voting to unify, adopted a $28,625 budget to cover the transportation and tuition for its thirty-six students, in the event Centre voted not to unify. Centre voted against unification, and Tampa's adopted budget, which required a levy of 9.65 mills, was filed with the county clerk.

Shortly after November 1, the appellants received tax notices stating that the county commissioners had made a levy of 6.37 mills on all taxable tangible property in the district for the "special high-school equalization fund" pursuant to the provisions of the above-mentioned statute. Thus, a levy totaling 16.02 mills was made against the property of the Tampa district. The 6.37-mill levy on property in the Tampa district would produce $16,673.47 in taxes.

During the 1965-66 school year no classes were conducted in any high school within the Tampa district; however, during this time the Tampa district had not been abolished, and still had a school board which had adopted the above-mentioned budget.

Under written protest several of the Tampa taxpayers paid their 1965 taxes. The matter was presented to the board of county commissioners, then to the state board of tax appeals. Upon adverse rulings by these public bodies, the taxpayers filed a petition in the district court. Appellees filed a motion to dismiss. After a hearing on the motion, the court made findings of fact and conclusions of law and dismissed the action. It is from this ruling the taxpayers have appealed.

Pertinent portions of K. S. A. 72-5715 are as follows:

"Annually, . . . the board of county commissioners of every county in this state shall make a tax levy of six and one-half (6½) mills on all the taxable tangible property of the county *which is not located in a school district of any type maintaining a high school within the district.* . . ." (Emphasis added.)

The appellants' principal basis of protest is that the legislature

did not intend for the statute to apply to a factual situation such as is present here. Appellees, on the other hand, seek to uphold the tax by the argument that since Tampa did not actually operate a high school during the school year in question, it was not "maintaining a high school within the district;" therefore, it was not subject to the levy.

A high-school equalization fund statute was originally enacted in 1949. (G. S. 1949, 72-5715.) The statute, as written, applied only to Osage and Stafford counties, and was declared unconstitutional in *Missouri Pacific Rld. Co. v. Board of County Comm'rs*, 172 Kan. 80, 238 P. 2d 462, as being special legislation where general legislation could have been made applicable. To cure the constitutional defects of the earlier statute, the legislature, by the enactment of chapter 411, Laws of 1951, made it applicable to all counties in the state. The 1951 statute, with certain amendments which are not germane to this case, now appears in its present form as K. S. A. 72-5715.

It is a primary rule of statutory construction that an enactment should be construed to carry out the purpose and intent of the legislature, and when such an intent is once ascertained, it should be given effect, even though literal meaning of the words used therein is not followed. (*Willmeth v. Harris*, 195 Kan. 322, 403 P. 2d 973.) In determining legislative intent, the court is not limited to a mere consideration of the words employed, but should look to the existing conditions, the causes which gave rise to the enactment, and to the object sought to be obtained. (*Perkins v. Lenora Rural High School*, 171 Kan. 727, 237 P. 2d 228.)

Appellants concede they were not "maintaining a high school" within the literal terms of the statute. They contend, however, that the legislature sought only to tax rural territory which was not included within the boundaries of any high-school district; that since the Tampa district was still organized and had a school board which had adopted a budget providing for the education of its students, it did not come within the purview of the statute. We are inclined to agree.

In deciding this case, we need not burden the opinion with a comprehensive review of the historical development of statutory law pertaining to the establishment and maintenance of high schools in this state. During the time preceding the enactment of the 1951 statute there was increasing concern among school and taxing officials that rural territory in approximately eighty counties of the state

was not included within the boundaries of any high-school district. High-school students from the "non-high-school" territory attended high schools in other districts, but the "non-high-school" territory, while subject to the general county high-school levy (see K. S. A. 72-5702), was not subject to the levy of any organized district maintaining a high school. (Kansas School Board Bulletin, Oct. 1950.) This concern found expression through the Kansas Legislative Council, which, at the request of the Kansas Association of School Boards, submitted "Proposal No. 15" to the 1951 session of the legislature for consideration. This proposal outlined a plan for financing high schools. One of the essential objects and features of the plan was to provide a levy against all property having a tax situs outside an organized high-school district. (Report and Recommendations of the Kansas Legislative Council, Ninth Biennial, 1951.) Against this background, Senate Bill No. 294 was introduced in the 1951 legislative session, and was enacted into law. Section 5 of the bill appeared in the statute books as G. S. 1951 Supp. 72-5715, and provided a levy on all taxable tangible property "not located in a school district of any type maintaining a high school."

From the foregoing chronology of events leading up to the enactment of the statute, it is obvious the lawmakers were concerned about territory outside the boundaries of any high-school district not bearing a share of the high-school tax burden. This they sought to remedy by the levy provided for in the statute.

One other feature of the statute bears mention. Based on an attendance formula, the taxes derived from the levy are distributed to other school districts maintaining high schools in the county. Such provision seems perfectly consistent with the object of the statute. Prior to the enactment, high-school students from territory outside an organized district depended on nearby districts for their education; however, the "non-high-school" territory rendered no tax support to the organized districts providing educational facilities for those students. The statute partially relieved this inequity by placing a portion of the tax load on "non-high-school" territory for the benefit of other districts maintaining high schools in the county.

From what has been said, we are of the opinion that the import of K. S. A. 72-5715, when considered in its entirety, is to impose a tax on taxable tangible property not located within the boundaries of any organized high-school district which has adopted a budget and thus made provisions for the education of its own students.

While it is true the Tampa district did not conduct classes or operate a high-school facility, it remained organized as a district, and its board adopted a budget providing for the cost of educating its students for the school year. The territory within the district was subject to a tax levy to meet the district's budget. Under the circumstances existing, for us to adopt the appellees' contention as to the interpretation of the statute would be to defeat the manifest purpose of the legislature.

The judgment of the lower court dismissing the appellants' petition is reversed.