No. 111,795

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JOSE DELACRUZ,
*Appellant*.

SYLLABUS BY THE COURT

1.

The purpose of immunity statutes is to seek a rational accommodation between the imperatives of the privilege against self-incrimination and the legitimate demands of government to compel citizens to testify.

2.

Interpretation of a statute is a question of law over which appellate courts have unlimited review.

3.

In determining if a defendant's due process rights to a timely appeal have been violated, a court should consider the following factors: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his or her right; and (4) the prejudice to the defendant.

1

**4.**

Appellate courts apply a dual standard of review on appeal from a finding of contempt: We exercise unlimited review over the question of whether the conduct is contemptuous and apply an abuse of discretion standard when reviewing the sanctions imposed.

**5.**

A judicial action constitutes an abuse of discretion if the action (1) is arbitrary, fanciful, or unreasonable; (2) is based on an error of law; or (3) is based on an error of fact.

**6.**

In Kansas, contempt of court may be direct or indirect, criminal or civil.

**7.**

Direct contempt is an act committed during the sitting of the court or of a judge in chambers, in its or in his or her presence. All other contempts are indirect.

**8.**

Direct contempt may be summarily punished without a written accusation against the accused.

**9.**

Sanctions for criminal contempt are intended to punish the contemnor for disobedience or disrespect to the court.

**10.**

The punishment for contempt is not regulated by the Kansas Sentencing Guidelines.

11.

A judgment of contempt lies within the sound discretion of the trial court and will not be reversed absent an abuse of discretion.

12.

In determining an appropriate sentence for a criminal contempt, a court should consider the following factors: (1) the extent of the willful and deliberate defiance of the court's order; (2) the seriousness of the consequences of the contumacious behavior; (3) the necessity of effectively terminating the defendant's defiance as required by the public interest; and (4) the importance of deterring such acts in the future.

13.

A litigant may not invite error and then complain of the error on appeal.

14.

Cumulative trial errors, when considered collectively, may require reversal of the defendant's conviction when the totality of circumstances substantially prejudiced the defendant and denied the defendant a fair trial. Notably, cumulative error will not be found when the record fails to support the errors raised on appeal by the defendant. Furthermore, a single error cannot constitute cumulative error.

Appeal from Reno District Court; JOSEPH L. MCCARVILLE III, judge. Opinion filed December 11, 2015. Affirmed.

*Sam S. Kepfield*, of Hutchinson, for appellant.

*Keith E. Schroder*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before MALONE, C.J., GREEN and POWELL, JJ.

GREEN, J.:  Jose Delacruz was convicted of direct criminal contempt of court and was sentenced to 9 years' imprisonment. On appeal, Delacruz raises six issues: (1) that he was exercising his right to remain silent under the Fifth Amendment to the United States Constitution; (2) that a special prosecutor should have tried the case; (3) that his contempt was a single ongoing event rather than three separate events; (4) that the delay in filing and docketing his appeal deprived him of due process; (5) that his 9-year sentence was excessive and the result of bias and prejudice; and (6) that cumulative errors deprived him of due process and a fair trial. Finding no merit in these arguments, we affirm.

On April 15, 2010, Delacruz was charged with first-degree murder and aggravated burglary. Delacruz and codefendant, Anthony Waller, were charged in connection with the death of Joshua Haines. On December 17, 2010, a jury convicted Delacruz of aggravated burglary but acquitted him of the first-degree murder charge. Delacruz was sentenced to 83 months in prison. Delacruz' conviction and sentence were affirmed on direct appeal in *State v. Delacruz*, No. 106,082, 2012 WL 1352865 (Kan. App. 2012) (unpublished opinion), *rev. denied* 299 Kan. 1271 (2014).

Waller's trial began on February 28, 2011, and Delacruz was subpoenaed as a witness. Ten days before Waller's trial began, the trial court held a hearing regarding Delacruz' request to plead his Fifth Amendment right to remain silent. Delacruz acknowledged that the State of Kansas had given him a grant of use immunity, but he argued that this immunity did not protect him from potential federal prosecution. The trial court took the matter under advisement.

On February 21, 2011, while waiting for the court's decision, Delacruz received a letter from United States Attorney for the District of Kansas Barry R. Grissom. The letter stated that Grissom was familiar with the facts of Delacruz' case and that no federal prosecution against him was warranted or would be forthcoming for his involvement in the murder of Haines.

4

The next day, the trial court issued an order stating: "K.S.A. 22-3415 confers upon the District Attorney the authority to grant use and derivative immunity. Written immunity has been granted by the District Attorney to Jose Delacruz. Therefore, Jose Delacruz will be compelled to testify in the trial of the above captioned matter."

Delacruz appeared in front of Judge Timothy Chambers three separate times on March 1, March 2, and March 4, 2011, and each time he refused to testify.

Between jury selection and opening statements for Waller's trial, the following exchange occurred:

"THE COURT: Mr. Delacruz, you want to come sit up in the witness stand? Have a seat, sir.

"We are now back on the record on State versus Waller. Both counsel are present with the defendant. The jury is not present. On the witness stand is Jose Delacruz who is a subpoenaed witness of the state. Mr. Delacruz is a co-defendant and has been previously convicted of the offense of aggravated robbery and been sentenced for that offense.

"Through his counsel, Alice Osburn, there ha[ve] been indications that Mr. Delacruz is going to refuse to testify. Ms. Osburn is presently in a jury trial in Wichita, but we are commencing trial. So what the court intends to do is, Mr. Delacruz, are you going to refuse the subpoena to testify in this case or not?

"MR. DELACRUZ: Yes.

"THE COURT: I will find you in direct contempt of court for disobeying a direct order of this court. I will impose a[n] appropriate sentence when Ms. Osburn is present. I believe that you should have counsel to make any statements when you're found in contempt. Then you have a right to offer an explanation to the court.

"Apparently she is under subpoena for Wednesday at, at some point. But when she . . . is available we will bring you back to court and I will impose the sentence that in all likelihood, the law indicates the maximum sentence I can sentence you to is 6 months in the county jail of which you will get no credit on any of your other sentences. But we will wait until Ms. Osburn appears.

5

"And obviously you may purge yourself of contempt at any time that you decide you are going to obey the orders of the court. And I believe that's all I can do this morning in regards to that till we can get Ms. Osburn here, so you can take Mr. Delacruz back to jail.

"JAILER: Thank you, judge."

Then, on March 2, 2011, 15 witnesses into the Waller trial, the following exchange occurred:

"THE COURT: Mr. Schroeder.

"MR. SCHROEDER: Judge, we issued another subpoena for Mr. Delacruz at 1:30 this afternoon. Alice Osburn is in the hallway; I don't know whether you want to take that up as well.

"THE COURT: If they can get him up here within the next 5 minutes we can take that up at 5 minutes till 3:00. We're in recess.

"(A recess is taken. Court reconvenes with counsel, the defendant, the witness Delacruz, and his counsel Alice Osburn present.)

. . . .

"THE COURT: We are back on the record on State versus Waller, 10 CR 291. Counsel and defendant are present. The jury is in the jury room.

"In the witness stand is Jose Delacruz. Mr. Delacruz has been subpoenaed as a witness by the State of Kansas. Mr. Delacruz was brought up prior to trial and indicated he would refuse to testify.

"Are you going to testify, Mr. Delacruz?

"[MR. DELACRUZ]: No.

"THE COURT: I'm ordering you to testify. Are you going to testify?

"[MR. DELACRUZ]: No, I'm not.

"THE COURT: You're indicating that you're disobeying a direct order of this court?

"[MR. DELACRUZ]: Yes.

"THE COURT: I have two options, Mr. Delacruz. One is I can sentence you right now to 6 months in the Reno County Detention Center. I cannot sentence you any further to that unless I have a jury trial to find out a finding of contempt. If, in fact, such a jury

6

trial is held, that I am not bound by the 6-month restriction. I can send you to jail as long as I feel appropriate under the facts and circumstances.

"Since I believe under the facts and circumstances a 6-month sentence is not appropriate I'm going to set the matter for a jury trial and a jury will decide whether you are in contempt of court, so I can comply by United States constitutional law and the law as set out by the Kansas Supreme Court. So that if you are found in direct contempt of court that I can impose what I feel is an appropriate sentence.

"You may purge yourself of that contempt by testifying before this trial is over. I would strongly suggest you speak to Miss Osburn based upon what I have just said and the possible ramifications of that statement that I have just made.

"After the things I have just said, Mr. Delacruz, are you still refusing the direct order of this court to honor the subpoena?

"MR. DELACRUZ: Yes."

Next, on March 4, 2011, the following exchange occurred with Delacruz present via video from the Reno County Detention Center:

"[THE COURT:] The only question I'm going to ask you, Mr. Delacruz, are you still refusing the direct order of the court to testify?

"MR. DELACRUZ: Yes, I am.

"THE COURT: That's what I needed to know this morning, Mr. Delacruz. We will proceed with the contempt proceeding then with your hearing with a jury. That's all today.

"MR. DELACRUZ: All right. Thank you."

On March 7, 2011, a jury convicted Waller of first-degree murder and aggravated kidnapping. Delacruz did not purge himself of contempt by testifying before Waller's trial ended.

In May 2011, at the direction of the court, the State filed an accusation of contempt that charged Delacruz with three counts of criminal contempt based on his refusal to testify against Waller. The State noted that Delacruz refused three separate

7

orders to testify. Delacruz' refusal resulted in him being unavailable for cross-examination, which resulted in his video recorded statements being inadmissible in the Waller trial. The State asked for a controlling sentence of 9 years in prison to be served consecutive to his 83-month prison sentence for aggravated robbery. The trial court then filed its own accusation of contempt that was much more concise and made no mention of the contempt being three separate charges. Delacruz pled not guilty, and the matter was set for trial.

On the morning of trial, Delacruz filed a motion to dismiss for double jeopardy, a motion to appoint a special prosecutor, and a motion to dismiss for violation of his Fifth Amendment right against self-incrimination. The trial court denied all of his motions.

After his motions were denied, Delacruz formally waived his right to a jury trial and the case was submitted to the trial judge based on stipulated facts. After hearing arguments, the trial judge stated:

> "There is really no doubt that Mr. Delacruz didn't comply with a direct order from District Judge Timothy J. Chambers, Division II, to testify in the Anthony Waller case and based upon my previous rulings there is no reasonable basis for him to have claimed the right not to testify under the Fifth Amendment so his refusal to testify was unlawful, was willful, was intentional and felonious and occurred here in Reno County in this court. The Court finds the defendant is guilty beyond a reasonable doubt of felony criminal contempt of court as alleged in the accusation."

After finding Delacruz guilty of contempt, the court immediately proceeded to sentencing. The State asked for a 3-year sentence for each separate refusal for a total of 9 years to be served consecutive to Delacruz' aggravated burglary sentence. Delacruz asked for a 6-month sentence. The trial court ultimately adopted the State's sentencing recommendation and ordered Delacruz to serve 9 years in prison to be served consecutive to his aggravated burglary sentence.

8

On November 10, 2011, Delacruz timely filed his notice of appeal. After numerous delays, this case was argued nearly 4 years later.

*Did Delacruz Have a Valid Fifth Amendment Right to Remain Silent That Defeated His Finding of Guilt for Direct Contempt?*

In his first issue on appeal, Delacruz argues that he should have been allowed to invoke his constitutional right to remain silent even though he was given immunity from prosecution or punishment in accordance with K.S.A. 22-3415. Specifically, Delacruz maintains that the immunity did not provide protection from federal prosecution; therefore, he should have been able to invoke his constitutional privilege against self-incrimination.

The purpose of immunity statutes is to "seek a rational accommodation between the imperatives of the privilege [against self-incrimination] and the legitimate demands of government to compel citizens to testify." *Kastigar v. United States*, 406 U.S. 441, 446, 92 S. Ct. 1653, 32 L. Ed. 2d 212 (1972). In Kansas, K.S.A. 22-3415 is the statute dealing with the privilege against self-incrimination and grants of immunity. K.S.A. 22-3415 provides:

> "(a) The provisions of law in civil cases relative to compelling the attendance and testimony of witnesses, their examination, the administration of oaths and affirmations, and proceedings as for contempt, to enforce the remedies and protect the rights of the parties, shall extend to criminal cases so far as they are in their nature applicable, unless other provision is made by statute.
>
> "(b) The county or district attorney, or the attorney general, may at any time, on behalf of the state, grant in writing to any person:
>
> "(1) Transactional immunity. Any person granted transactional immunity shall not be prosecuted for any crime which has been committed for which such immunity is granted or for any other transactions arising out of the same incident.

9

"(2) Use and derivative immunity. Any person granted use and derivative use immunity may be prosecuted for any crime, but the state shall not use any testimony against such person provided under a grant of such immunity or any evidence derived from such testimony. Any defendant may file with the court a motion to suppress in writing to prevent the state from using evidence on the grounds that the evidence was derived from and obtained against the defendant as a result of testimony or statements made under such grant of immunity. The motion shall state facts supporting the allegations. Upon a hearing on such motion, the state shall have the burden to prove by clear and convincing evidence that the evidence was obtained independently and from a collateral source.

"(c) Any person granted immunity under either or both subsections (b)(1) or (2) may not refuse to testify on grounds that such testimony may self incriminate unless such testimony may form the basis for a violation of federal law for which immunity under federal law has not been conferred. No person shall be compelled to testify in any proceeding where the person is a defendant.

"(d) No immunity shall be granted for perjury as provided in K.S.A. 21-3805, and amendments thereto, which was committed in giving such evidence."

The written grant of use immunity given to Delacruz reads as follows:

"COMES NOW the Plaintiff, State of Kansas, by and through Reno County District Attorney of the 27th Judicial District, Keith E. Schroeder, pursuant to the authority vested in me as District Attorney, by K.S.A. 22-3415(a) and (c), do hereby grant to: Jose G. Delacruz, immunity from the use of any testimony given in the above-captioned matter on February 28, 2011 through March 9, 2011. I, Keith E. Schroeder, District Attorney, grants [*sic*] this use immunity as described above with the legal assurance that such testimony will not be used against Jose G. Delacruz in any potential future case against Jose G. Delacruz. I, Keith E. Schroeder, District Attorney, condition this grant of use immunity as described on the condition that the testimony of Jose G. Delacruz must be truthful."

The State relies on *In re Birdsong*, 216 Kan. 297, 531 P.2d 1301 (1975), to support its argument that Delacruz did not have a valid Fifth Amendment right to refuse to testify.

10

In *Birdsong*, the defendant was granted immunity but still refused to testify, arguing that his immunity did not protect him from federal prosecution. In rejecting the defendant's claim, our Supreme Court analyzed K.S.A. 22-3415 and held that the witness may be compelled to testify "[i]f the written grant of immunity contains no limitations which limit the constitutional privilege against self-incrimination or render the witness subject to federal prosecution." 216 Kan. at 303. The court further held:

> "The grant of immunity pursuant to the Kansas statute (K.S.A. 22-3415 [Weeks]) affords a witness protection from self-incrimination in state prosecutions and under the federal case law a similar protection from federal prosecutions is afforded on account of any transaction or matter contained in any statement or about which such witness shall be compelled to testify. Such compelled statement or testimony shall not be used against such witness in any prosecution for a crime, state or federal." 216 Kan. at 303.

Delacruz incorrectly argues that the holding in *Birdsong* applies only to cases involving transactional immunity and not use immunity which was given in this case. The *Birdsong* court even stated that under K.S.A. 22-3415, "[i]t appears from our reading of the statute that both a transactional immunity and a use immunity is provided." 216 Kan. at 304. Thus, based on *Birdsong* it seems that a grant of immunity protects the witness from self-incrimination for any future state or federal prosecutions.

The plain language of the statute also supports the trial court's finding that Delacruz was not entitled to a valid Fifth Amendment right to refuse to testify. As stated earlier, "[a]ny person granted immunity . . . may not refuse to testify on grounds that such testimony may self incriminate *unless* such testimony may form the basis for a violation of federal law for which immunity under federal law has not been conferred." (Emphasis added.) K.S.A. 22-3415(c). In this case, Delacruz was clearly granted immunity from the State. In addition to that immunity, Delacruz also received a letter from United States Attorney Barry R. Grissom, informing Delacruz that the United States Attorney's Office for the District of Kansas had no federal interest in this matter and that no federal

11

prosecution was warranted. The letter plainly stated that it did not constitute a formal grant of immunity, but it explained that it was unlikely that any federal offense was committed in this case and, therefore, no federal prosecution would result from Delacruz testifying.

Under the plain language of K.S.A. 22-3415(c), Delacruz has failed to establish that his testimony might form the basis for a violation of federal law. Moreover, while the letter was not a formal grant of immunity from federal prosecution, it clearly stated that no federal prosecution would be forthcoming.

Based on these facts, we determine that Delacruz has failed to show that he had a valid Fifth Amendment right to refuse to testify.

*Did the Trial Court Err in Failing to Request a Special Prosecutor?*

Next, Delacruz argues that the trial court erred in failing to request a special prosecutor to prosecute Delacruz for contempt. Delacruz asserts that a special prosecutor was necessary in this case because the district attorney who prosecuted his contempt case was the same district attorney who prosecuted him for first-degree murder, for which he was acquitted. Delacruz maintains that the district attorney asked for such a long sentence for his contempt conviction because the district attorney was trying to make up for losing the murder conviction.

Interpretation of a statute is a question of law over which appellate courts have unlimited review. *State v. Eddy*, 299 Kan. 29, 32, 321 P.3d 12, *cert. denied* 135 S. Ct. 91 (2014).

Regarding contempt proceedings, K.S.A. 20-1206 states: "Upon request by a district judge the attorney general shall furnish said court with a special prosecutor to prosecute contempt proceedings."

Under K.S.A. 20-1206, the trial court is not required to request a special prosecutor; it simply states that the trial court may request a special prosecutor. In this case, the trial court declined to request a special prosecutor, finding that it was unnecessary. Specifically, the trial judge held:

"I would note that it's Chapter 20. It covers all contempts of court. Taking Miss Osburn's argument to the logical conclusion, every Friday in Reno County, Kansas the attorney general would be prosecuting 50 contempt citations for failure to pay child support in Reno County, Kansas if that statute actually implies what is suggested to me. Obviously, either all the courts in Kansas, all 238 State court judges are ignoring this statute or it doesn't mean that. In fact, the first sentence just says this act so it's the act that covers all the rules on how you do contempts; direct contempt, indirect contempt, criminal contempt, civil contempt, all of them. The second sentence provides that a district judge may request, not a district magistrate judge but a district judge may request that the attorney general provide a special prosecutor to prosecute contempt proceedings. If you're going to have a special prosecutor upon request then you must have on [*sic*] the rest of the time a regular prosecutor and when I read this section as a whole and when I look back on my life experience I do recall cases in which district judges have had to request the appointment of a special prosecutor. For example, if I was to cite Mr. Schroeder in contempt of court I'd probably have to have an assistant attorney general come down here as a special prosecutor to prosecute him because we can't really expect his assistants to prosecute him . . . . [s]o as to the motion to dismiss because it's not brought by an attorney who is an assistant attorney general I find that that does not have merit."

Aside from Delacruz' allegations of bias against the district attorney, he has failed to show why a special prosecutor was necessary in this case. Moreover, even if the district attorney was biased against Delacruz which may have led to an excessive

sentencing recommendation, the trial court judge makes the ultimate sentencing decision. In this case, Delacruz waived his right to a jury trial so his contempt case was presented on stipulated facts at a bench trial. Other than possibly recommending a lesser sentence, there was nothing else a special prosecutor could have done differently in this case. As a result, Delacruz' argument fails.

*Did the Trial Court Find That Delacruz' Contempt Was Three Separate Events Instead of One Ongoing Event?*

Next, Delacruz argues that "the information charging him with three counts of contempt, rather than one, and the conviction for three counts of contempt, rather than one, were contrary to long-established law." Delacruz maintains that his convictions must be reversed.

In his brief, Delacruz skips directly to the law on this issue without explaining what actually happened in his case. It is true that the State's original accusation for contempt alleged three separate events of contempt and requested three separate convictions. Nevertheless, the trial court then wrote its own accusation for contempt that was much more concise and removed any language about three separate charges of contempt. The trial court's accusation for contempt read as follows:

> "This Court is informed that on or about the 28th day of February 2011 and continuing through the 4th day of March 2011, one, Jose DeLaCruz, then and there being present, in Reno County, Kansas in the presence of Timothy J. Chambers, the duly elected, qualified and acting District Judge, 27th Judicial District of Kansas Division II, did UNLAWFULLY, WILFULLY, INTENTIONALLY and FELONIOUSLY refuse to comply with an order of the District Court to appear and testify under oath as a witness in Case 2010 CR 291, State v. Anthony Waller, which was then in Felony Jury Trial with a jury duly impaneled sworn and receiving evidence, contrary to the dignity and respect of the District Court and the peace and dignity of the State of Kansas."

14

On the record, the trial judge explained his reason for writing a new accusation for contempt:

"I cut it down because what the State alleged is too long and I believe that we're talking about one, kind of a single impulse offense here. I've been doing some thinking. I don't think it's three contempts. I think that he had more than one opportunity to testify but I don't think there's a different motivation for each of them. I think it's the sameone [*sic*], I mean, going into his mind."

There is no evidence in the record to support Delacruz' argument that he was charged and convicted of three separate counts of contempt. As stated earlier, the State did originally charge him with three separate counts but that was later corrected by the trial court. Moreover, although the trial court did ultimately accept the State's sentencing recommendation, the trial court made it clear that it did not see this as three separate findings of contempt. Finally, the journal entry simply states that "[t]he Court finds the Defendant guilty beyond a reasonable doubt of Direct Criminal Contempt of Court, pursuant to K.S.A. 20-1203."

Based on the record, Delacruz is incorrect when he argues that he was charged with and convicted of three separate counts of contempt. As a result, his argument fails.

*Did the Delays in Filing and Docketing Delacruz' Appeal Deprive Him of Due Process?*

Next, Delacruz contends that his due process rights were violated as a result of the delays in appealing his contempt conviction and sentence. Delacruz argues that the unnecessary delay in filing and docketing his appeal, which was caused by the trial court's insistence that Delacruz' appeal be handled by the appellate defender office (ADO), violated his due process rights.

15

To support his argument, Delacruz relies on *Harris v. Champion*, 15 F.3d 1538 (10th Cir. 1994). The *Harris* court applied a four-factor speedy trial analysis established in *Barker v. Wingo*, 407 U.S. 514, 530, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972), to determine if the defendant's due process rights to a timely appeal had been violated. Those four factors, known as the *Barker* test, are: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his or her right; and (4) prejudice to the defendant. 15 F.3d at 1559 (adopting factors from *Barker*, 407 U.S. at 530).

These factors have been applied by our court to determine whether a defendant's due process rights have been violated by the delays in court proceedings. See *State v. Bussart-Savaloja*, 40 Kan. App. 2d 916, 920-21, 198 P.3d 163 (2008), *rev. denied* 288 Kan. 833 (2009); *State v. McLinn*, No. 104,882, 2014 WL 3843071, at *5-6 (Kan. App. 2014) (unpublished opinion) (applying *Harris* factors to determine if defendant's due process right had been violated by delays), *rev. denied* 300 Kan. 1106 (2014).

*Length of Delay*

In this case, it was a 2-1/2-year delay between when Delacruz filed his notice of appeal and when his appeal was actually docketed. Our court has held that only the passing of an inordinate amount of time triggers due process concerns. A 2-year delay has been established as being presumptively inordinate. *Bussart-Savaloja*, 40 Kan. App. 2d at 921-22.

Here, Delacruz' notice of appeal was filed on November 10, 2011, and we have not adjudicated his appeal until now. The State points out that some of the delay was caused by Delacruz' counsel. For example, Delacruz' appellate brief was not filed until over 9 months after his appeal was docketed. Additionally, Delacruz' originally appointed private counsel had to withdraw due to a conflict of interest which caused a 4-month delay. Nevertheless, none of these facts mitigate the length of delay caused by the trial

court's refusal to allow the ADO to withdraw. That delay was just over 2 years, which is presumptively inordinate; therefore, this factor weighs in favor of a due process violation.

*Reason for the Delay*

Delacruz filed his notice of appeal on November 10, 2011. That same day the ADO was appointed to represent Delacruz. On January 9, 2012, the ADO moved to withdraw claiming it could not represent Delacruz because it was not a felony conviction. On January 24, 2012, the trial court denied the motion. The next day, on January 25, 2012, the ADO filed a supplemental motion to withdraw. On August 21, 2013, the trial court eventually denied the supplemental motion (8-month delay). The trial court eventually agreed to appoint private counsel on December 18, 2013, after causing a 2-year delay. Unfortunately, on April 1, 2014, private counsel had to withdraw due to a conflict of interest. Delacruz' current counsel was appointed on April 28, 2014 (4-month delay). Delacruz' case was docketed on May 21, 2014. Thus, it took 2-1/2 years before Delacruz' appeal was docketed with this court.

Thereafter, transcription delays were incurred between June 5, 2014, and August 29, 2014 (2-1/2-month delay), appellant briefing required until February 23, 2015 (9 months), and briefing by the State required until April 27, 2015 (2 months). After briefing was completed, this court set the matter on an argued docket for September 2015. Delacruz has waited nearly 4 years for this decision.

The delays caused by transcripts and briefing are common for most appellate cases; what is uncommon is the over 2-year delay in appointing appropriate appellate counsel. Thus, this factor weighs in favor of a due process violation.

*The Assertion of the Defendant's Rights*

Delacruz asserted his right to appeal immediately after sentencing. Additionally, on April 26, 2013, while waiting for the court's decision on the ADO's supplemental motion to withdraw, Delacruz filed a letter with the court requesting that he be appointed appellate counsel. And again, on June 28, 2013, Delacruz filed a pro se motion for appointment of counsel.

Delacruz did not just sit around and acquiesce to this 2-1/2-year delay. Instead, Delacruz affirmatively asserted his right to a timely appeal. Therefore, this factor weighs in favor of a due process violation.

*Prejudice to the Defendant*

"Prejudice may result from any of the following: (i) oppressive incarceration pending appeal; (ii) constitutionally cognizable anxiety awaiting resolution of the appeal; or (iii) impairment of a defendant's grounds for appeal or a defendant's defenses in the event of a retrial." *Bussart-Savaloja*, 40 Kan. App. 2d at 925 (citing *Harris*, 15 F.3d at 1563-65.)

The only prejudice that Delacruz asserts is that if his sentence were reduced he would be eligible for a lower level of security or possibly rehabilitative programs. This assertion has nothing to do with prejudice. Delacruz has failed to allege or establish any of the three prejudice factors. Delacruz has failed to show that he is being held in oppressive incarceration pending appeal because he is not being held on this charge yet. He is currently in prison for his aggravated robbery conviction. Delacruz has also failed to show anxiety or concern which requires a particularized and substantial showing of anxiety. See *Harris*, 15 F.3d at 1565. Finally, Delacruz has failed to show or allege that the delay impaired his grounds for appeal or his defenses for a retrial. As a result, this factor does not weigh in favor of a due process violation.

18

*Balancing the Factors*

After considering the four factors, we determine that Delacruz has failed to establish that the delay in the appeal process deprived him of his due process. Although three of the four factors suggest that Delacruz' due process rights were violated, his failure to show substantial prejudice negates any violation. "[T]he necessity of showing substantial prejudice dominates the *Barker* test once a defendant has been convicted, and the first and second *Barker* factors do not compensate for a failure to timely assert the right or allege substantial prejudice. [Citation omitted.]" *Bussart-Savaloja*, 40 Kan. App. 2d at 926.

As a result, we conclude that Delacruz has failed to establish the delay in the appeal process has deprived him of due process.

*Was Delacruz' Sentence of 108 Months Excessive as a Matter of Law?*

Next, Delacruz maintains that his sentence of 108 months for contempt was excessive as a matter of law. Delacruz concedes that the statutes which define contempt do not specify any penalties; nevertheless, he argues that the punishment must not be cruel, unusual or excessive.

Appellate courts apply a dual standard of review on appeal from a finding of contempt: We exercise unlimited review over the question of whether the conduct is contemptuous and apply an abuse of discretion standard when reviewing the sanctions imposed. *In re M.R.*, 272 Kan. 1335, 1342, 38 P.3d 694 (2002). A judicial action constitutes an abuse of discretion if the action (1) is arbitrary, fanciful, or unreasonable; (2) is based on an error of law; or (3) is based on an error of fact. *State v. Mosher*, 299 Kan. 1, 3, 319 P.3d 1253 (2014).

19

In Kansas, contempt of court may be direct or indirect, criminal or civil. Direct contempt is an act "committed during the sitting of the court or of a judge at chambers, in its or his presence." K.S.A. 20-1202. All other contempts are indirect. K.S.A. 20-1202. Under K.S.A. 20-1203, direct contempt may be summarily punished without a written accusation against the accused.

The contempt here was direct criminal contempt. Sanctions for criminal contempt are intended to punish the contemnor for disobedience or disrespect to the court. See *State v. Jenkins*, 263 Kan. 351, 352, 356-59, 950 P.2d 1338 (1997). Additional constitutional considerations become necessary when serious criminal contempt penalties are imposed. See *State v. Shannon*, 258 Kan. 425, 435-36, 905 P.2d 649 (1995) (jury trial is required where the sentence imposed for contempt of court exceeds 6 months).

Additionally, contempt is not a crime defined and set forth in our criminal code. K.S.A. 20-1201 *et seq.* governs contempt. In fact, "[n]o inherent power to punish for contempt exists independent of K.S.A. 20-1201 *et seq.*" *Jenkins*, 263 Kan. at 352. Moreover, the punishment for contempt is not regulated by the Kansas Sentencing Guidelines. A judgment of contempt lies within the sound discretion of the trial court and will not be reversed absent an abuse of discretion. *Shannon*, 258 Kan. at 435.

Aside from the 6-month jury trial requirement, the punishment for contempt of court is undefined. In this case, the State recommended that Delacruz receive 3 years for each refusal to testify based on the seriousness of the underlying murder trial. The State maintains that because first-degree murder is one of the most serious crimes committed in society, any effort to subvert justice deserves the stiffest possible penalty.

On the other hand, Delacruz correctly argues that the punishment for contempt is not determined by the level of the underlying case. Although in Kansas the sentencing guidelines base the punishment on the underlying crime, the sentencing guidelines do not

20

apply to contempt convictions. Delacruz argues that the trial court erred by essentially sentencing him according to the sentencing guidelines. To support his argument, Delacruz points to the trial judge's statement: "This is more serious than armed robbery what you did, Mr. Delacruz . . . ."

When sentencing Delacruz, the trial judge made the following additional statements:

"The question here is not, this is not a case where we're talking about somebody not taking their hat off or saying a bad word or not standing to address the Court or interrupting another attorney where those things are somewhat disruptive and do not lead to creation of the kind of atmosphere that we need to have in order for people to feel that when they come to court they can present, they can give their, they can present their case and witnesses can come to court and testify without having intimidation going in the courtroom or disruption or annoyance or disturbance. Those kind of things, that's, in my opinion, are a little on a different level and a different plane. What we have in this case is an attack against the whole, the very essence of the judicial process.

"The reason that we're talking about celebrating Veteran's Day tomorrow, thousands and thousands of veterans have sacrificed their life to preserve our way of life; the most, in my opinion the most important of which is to have everyone treated the same, that in courts doesn't matter who you are you have the same rights. Doesn't matter who you are, you're treated with the same respect and dignity and it doesn't matter who you are if you're the poorest person with the most depraved background, if you have a witness that you want to have testify and . . . that has relevant and admissible evidence in your case then you have the right to have that person brought to court and compelled to testify. Defendants charged with murder or other heinous crimes have the right to expect that if they have a witness that's going to help present their defense that the Court will have the power to bring that person in and make them testify in order to help them prove their innocence and what Mr. Delacruz has done is to say well, maybe not so fast. It doesn't apply when I decide that I'm not going to be the witness.

"What I need to know is okay, what is a sufficient sentence to cause a person in Mr. Delacruz's [*sic*] position to decide that he'd rather testify and take his chances with whatever repercussions there might be that his attorneys tell him about. What is enough

21

years or months to get him to say I'm going to take the stand, I'm going to testify because I do not want to degrade the authority of the Court. It's certainly not six months. It certainly has to be a number of years. It doesn't matter whether Mr. Delacruz received an 83 month sentence or a life sentence, you know, because we're not talking about his sentence for the crime that he was convicted of. We're talking about what he did in this contempt.

"What does this do to the dignity and the authority of the Court? I believe that I have a duty to, under Canon One and Canon Two under the [Code] of Judicial Conduct to maintain the authority and dignity of the Court and it's not whether the attorney general came here. The attorney general would be assisting the Court by presenting evidence and making arguments to assist the Court in figuring out the Court's duty but the duty to punish for contempt of court is not an executive branch function. It's a duty that the Court has as a part of the essence of what a court is. We are separate and co equal branch of government and our purpose is to make sure that all parties have a tribunal in which they have access to compulsory process that's effective. I don't have anything to suggest that any sentence less than 108 months would be sufficient to charge the Court's responsibility. I realize that's more than he got for the robbery but this is more serious than robbery. This is an attack against our judicial system. This is more serious than armed robbery what you did, Mr. Delacruz, so it's the order and judgment and sentence of the Court that you serve 108 months in the custody of the Secretary of Corrections for contempt of court. It is consecutive to your 83 months [*sic*] sentence."

An appellate court is to give deference to a trial court's sentence imposed for direct criminal contempt because the trial judge had the opportunity to observe the defendant and the proceedings. Because there are no sentencing guidelines in contempt cases, an appellate court must insure that the contempt power is not abused. In determining an appropriate sentence for criminal contempt, a court should consider the following factors: "[1] the extent of the willful and deliberate defiance of the court's order; [2] the seriousness of the consequences of the contumacious behavior; [3] the necessity of effectively terminating the defendant's defiance as required by the public interest; and [4] the importance of deterring such acts in the future." *United States v. Mine Workers*, 330 U.S. 258, 302-03, 67 S. Ct. 677, 91 L. Ed. 884 (1947).

22

Delacruz argues that "any punishment for contempt must not be cruel or unusual, must not be excessive, and may be mitigated by any circumstances of the case." Delacruz further argues that this length of punishment for direct contempt seems to be an issue of first impression in the state of Kansas. Delacruz points out that a federal court had determined that a criminal contempt conviction for refusal to testify was a petty offense rather than a class A felony. The court held that a sentencing judge should look to the most analogous offense and sentence accordingly. See *United States v. Carpenter*, 91 F.3d 1282, 1283-84 (9th Cir. 1996).

The State argues that the sentence is not excessive for the following reasons: (1) Delacruz had no right to refuse to testify; and (2) due to Delacruz' failure to testify, the State was prevented from introducing his statements which would have corroborated the testimony of two other eyewitnesses whose credibility was hampered because of their drug-induced conditions, psychiatric impairment, and lengthy criminal records. The State also notes that Delacruz' contemptuous acts in this particular case are in no way mitigated because Waller, the codefendant, was later found guilty of first-degree murder and aggravated kidnapping despite Delacruz' refusal to testify. The State points to the severity of the underlying crimes and argues any effort to subvert justice in any criminal case would be inexcusable.

We agree with the State. The factors listed in *Mine Workers*, favor imposition of a substantial sentence. As to the first factor, Delacruz' refusal to testify was willful and deliberate because he did not have a Fifth Amendment right not to testify. Additionally, regarding the second factor, the underlying crimes at issue here, first-degree murder and aggravated kidnapping, were serious and Delacruz' failure to testify hindered the public interest in finding the truth and seeking justice. Finally, as to the third and fourth factors, the public interest in terminating the defiance and the importance of future deterrence both favor a substantial sentence. The 9-year sentence here properly deters future witnesses from refusing to testify and obstructing the administration of justice in serious

23

criminal cases. The trial court specifically stated that Delacruz' refusal to testify was "an attack against our judicial system." A judgment of contempt lies within the sound discretion of the trial court and will not be reversed absent an abuse of discretion. As a result, the trial court's sentencing decision is entitled to deference. Accordingly, we cannot say that the trial court abused its discretion in imposing the 9-year sentence.

*Recusal of Sentencing Judge*

Delacruz also argues that the trial judge who sentenced him should have recused himself because he was biased. After he was sentenced, Delacruz filed a pro se motion for the judge to recuse himself and also a motion to modify his sentence.

In response, the State correctly points out that Delacruz specifically chose Judge McCarville to sentence him. The following discussion occurred at sentencing:

> "[THE STATE]: Judge, that's an interesting question as to which court should be doing the sentencing. I'm going to leave it to you or whomever but I'm going to raise the issue. The contempt happened in front of Judge Tim Chambers. I don't know whether he would be the appropriate one to impose the sanction or since you've heard the trial. It doesn't matter to me but I want to raise that issue, Judge.
> "THE COURT: All right. Miss Osburn, anything on that?
> "[DELACRUZ' COUNSEL]: Could I have a minute to ask my client his position? (Counsel is conferring with client.) My client is asking for you to sentence him, Judge."

A litigant may not invite error and then complain of the error on appeal. *State v. Verser*, 299 Kan. 776, 784, 326 P.3d 1046 (2014). Based on the record, Delacruz clearly invited this error when he chose to have Judge McCarville sentence him; therefore, he cannot complain about him on appeal.

24

*Did Cumulative Error Deprive Delacruz of Due Process?*

Finally, Delacruz argues that the cumulative effect of several errors warrants reversal of his conviction.

> "Cumulative trial errors, when considered collectively, may require reversal of the defendant's conviction when the totality of circumstances substantially prejudiced the defendant and denied the defendant a fair trial. Notably, cumulative error will not be found when the record fails to support the errors raised on appeal by the defendant. Furthermore, a single error cannot constitute cumulative error." *State v. Waller*, 299 Kan. 707, Syl. ¶ 4, 328 P.3d 1111 (2014).

Because we determined that no error occurred in this case, Delacruz' claim of cumulative error is without merit.

Affirmed.