NOT DESIGNATED FOR PUBLICATION

No. 121,676

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

WESLEY S. COUSINS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sumner District Court; R. SCOTT MCQUIN, judge. Opinion filed October 23, 2020. Affirmed in part and dismissed in part.

*Kevin J. Zolotor*, of O'Hara & O'Hara, LLC, of Wichita, for appellant.

*Mitch Spencer*, assistant county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before MALONE, P.J., BUSER and POWELL, JJ.

PER CURIAM: Wesley S. Cousins appeals his conviction of driving under the influence (DUI), claiming the district court erred by denying his motion to suppress the results of his evidentiary breath test. Cousins contends that his consent to be tested was involuntary and unduly coerced because the implied consent advisories stated that (1) Kansas law "requires" drivers to submit to testing and (2) refusal to submit to testing may be used as evidence at trial. Cousins also claims the statutory provision allowing test refusal evidence to be used against a driver at a DUI trial is unconstitutional.

1

We find that the implied consent advisory misstated the law by telling Cousins that Kansas law "requires" drivers to submit to testing, so Cousins' consent to the breath test was involuntary and the breath test violated his Fourth Amendment rights. We need not reach Cousins' additional claim that the advisory that refusal to submit to testing may be used as evidence at trial was inaccurate and coercive. But although the breath test did not fully comply with Cousins' constitutional rights, we find that the results are admissible under the good-faith exception to the exclusionary rule because the law enforcement officer reasonably relied on the current statutory advisories in use at the time of Cousins' arrest. Finally, we find that Cousins lacks standing to challenge the constitutionality of the statutory provision allowing test refusal evidence to be used against a driver at a DUI trial because Cousins did not refuse to submit to testing.

FACTUAL AND PROCEDURAL BACKGROUND

On March 18, 2018, Kansas State Trooper Reed Sperry saw Cousins drive past him at the Kansas Star Casino toll booth in Sumner County and saw an open can of beer in Cousins' truck. Sperry stopped Cousins and noticed he had bloodshot and watery eyes, slurred speech, and an odor of alcoholic beverage. Cousins admitted to drinking "about 3 beers" earlier in the day. Sperry administered field sobriety tests and Cousins exhibited several clues on both the walk-and-turn test and the one-leg-stand test. Sperry concluded that Cousins could not safely operate a motor vehicle and arrested him for DUI. He transported Cousins to the Mulvane Police Department, where Sperry read Cousins the implied consent advisories as set out on the authorized DC-70 form (DC-70). The DC-70 advised Cousins as follows:

> "1. *Kansas law* (K.S.A. 8-1001) *requires you to submit to and complete one or more tests of breath, blood or urine to determine if you are under the influence of alcohol or drugs or both*.

2

"2. You have no constitutional right to consult with an attorney regarding whether to submit to testing.

"3. If you **refuse** to submit to and complete any test of breath, blood or urine hereafter requested by a law enforcement officer, your driving privileges will be suspended for 1 year.

"4. If you submit to a breath or blood test requested by a law enforcement officer and produce a completed test result of .15 or greater, your driving privileges will be suspended for one year.

"5. If you submit to a breath or blood test requested by a law enforcement officer and produce a completed test result of .08 or greater, but less than .15, the length of suspension will depend upon whether you have a prior occurrence. A prior occurrence is a prior test refusal, test failure or any conviction or diversion for an alcohol or drug related conviction as defined in K.S.A. 8-1013, and amendments thereto, or any combination thereof, whether before, on or after July 1, 2001.

"6. If you fail a test with an alcohol content of .08 or greater, but less than .15, and **do not have any prior occurrences***,* your driving privileges will be suspended for 30 days.

"7. **If you have a prior occurrence** and fail a test with an alcohol content of .08 or greater, but less than .15, your driving privileges will be suspended for one year.

"8. *Refusal to submit to testing may be used against you at any trial on a charge arising out of the operation or attempted operation of a vehicle while under the influence of alcohol or drugs, or both.*

"9. The results of the testing may be used against you at any trial on a charge arising out of the operation or attempted operation of a vehicle while under the influence of alcohol or drugs, or both.

"10. After the completion of testing, you have the right to consult with an attorney and may secure additional testing, which, if desired, should be done as soon as possible and is

customarily available from medical care facilities willing to conduct such testing."
(Emphases added.)

Cousins agreed to take a breath test on an Intoxilyzer 9000, and his breath sample showed an alcohol content of 0.112. On April 16, 2018, the State charged Cousins with one count of misdemeanor DUI; the State later amended the complaint to add a misdemeanor charge of transporting an open container of alcoholic beverage.

Cousins moved to suppress the breath test results. In the motion, he argued that Sperry's statement to him—per paragraph No. 1 of the DC-70—that Kansas law required him to submit to a breath test was inaccurate because Cousins had a constitutional right to withdraw his implied consent to such testing. He also argued that Sperry's statement—per paragraph No. 8 of the DC-70—that refusing the breath test could be used against him at a trial was both inaccurate and unduly coercive. Cousins argued that the district court should exclude his breath test results because his consent to the test was involuntary.

The State filed a legal memorandum opposing the motion to suppress. In its memorandum, the State contended that the DC-70 was not inaccurate or unduly coercive and that Cousins' consent to the breath test was voluntary. In the alternative, the State argued that the good-faith exception to the exclusionary rule prevented suppression of the evidence. More specifically, the State asserted that "Trooper Sperry gave the DC-70 notices as they are currently given and the purpose of the exclusionary rule would not be served to exclude the evidentiary breath test when the Trooper did not make a mistake."

The district court held a hearing on the motion to suppress on January 25, 2019. At the hearing, the parties stipulated "that the only issue is the voluntariness of the evidentiary breath test because of the DC-70 notices that were given," and the district court admitted the DC-70 into evidence. The State argued that the DC-70 notices were

4

not unduly coercive and, in the alternative, that the exclusionary rule should not apply to exclude the test results.

In response, Cousins pointed out that in *State v. Ryce*, 303 Kan. 899, 944, 368 P.3d 342 (2016) (*Ryce I*), *aff'd on reh'g* 306 Kan. 682, 396 P.3d 711 (2017) (*Ryce II*), our Supreme Court had recently held that individuals have a constitutional right to withdraw implied consent and refuse to submit to a breath test. Cousins argued that when Sperry told him that he was required to submit to the evidentiary breath test, Sperry misstated the law and unduly coerced him into taking the test. He also asserted that the DC-70 advisory that evidence of a breath test refusal could be used against him at trial rendered his consent to the test involuntary. Cousins also argued that the good-faith exception to the exclusionary rule did not apply in this case.

After hearing arguments, the district court found that the language in the DC-70 telling Cousins that he was required to submit to testing was not unduly coercive. The district court took under advisement Cousins' argument about the unduly coercive nature of being advised that a test refusal could be used against him at trial.

On February 7, 2019, the district court issued its final ruling from the bench. Noting that the DC-70 referred to the civil consequences of refusing to submit to testing, the district court again found that the language in the DC-70 that Cousins was required to submit to testing did not mislead him into believing that he could not refuse the test. Next, the district court found that *State v. Bussart-Savaloja*, 40 Kan. App. 2d 916, 198 P.3d 163 (2008), controlled the issue of whether using test refusal evidence at a later trial violates an individual's constitutional rights. *Bussart-Savaloja* held there was no constitutional right to refuse testing, so there was no constitutional right that would exclude evidence of a test refusal at trial. 40 Kan. App. 2d at 928. Thus, the district court rejected Cousins' argument that Sperry unduly coerced his consent to the breath test by

5

stating that refusing to take the test could be used against him at a later trial. The district court issued a written journal entry denying the motion to suppress on April 17, 2019.

On June 13, 2019, the district court held a bench trial on stipulated facts. The district court found Cousins guilty of both charges. On July 25, 2019, the district court sentenced Cousins to 6 months in jail for the DUI and 30 days in jail for transporting an open container. The district court granted Cousins probation for 1 year after serving 48 hours in jail. Cousins timely appealed the district court's judgment.

DID THE DISTRICT COURT ERR BY DENYING COUSINS' MOTION TO SUPPRESS?

Cousins argues that Sperry unlawfully coerced him into consenting to and submitting to a breath test, so the district court erred by denying his motion to suppress the breath test results. More specifically, Cousins asserts that the following statements made by Sperry and reflected in the DC-70 unduly coerced his consent: (1) Kansas law "requires" drivers to submit to testing and (2) refusal to consent to testing may be used as evidence at trial. In response, the State argues that the test results were admissible because Cousins validly consented to the test, the test was properly administered as a search incident to arrest, and the good-faith exception to the exclusionary rule applies to allow the evidence even if requiring him to submit to the test was unconstitutional. In a reply brief, Cousins asserts that this court should not consider the search incident to arrest doctrine because the State did not argue that the doctrine applied in district court. Cousins also argues that the good-faith exception should not apply in this case.

Generally, the standard of review for a district court's decision on a motion to suppress has two parts. First, the appellate court reviews the district court's factual findings to determine whether they are supported by substantial competent evidence. Next, the ultimate legal conclusion is reviewed using a de novo standard. *State v. Hanke*, 307 Kan. 823, 827, 415 P.3d 966 (2018). But when, as here, the material facts supporting

6

a district court's decision on a motion to suppress are not in dispute, only the second part of the test matters and the appellate court has unlimited review over the district court's legal conclusion about whether the evidence should be suppressed. 307 Kan. at 827.

We begin by examining the text of the applicable constitutional provisions. The Fourth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Our Supreme Court has held that § 15 of the Kansas Constitution Bill of Rights provides the same protections. *State v. Boggess*, 308 Kan. 821, 825-26, 425 P.3d 324 (2018).

Our Supreme Court has held that a breath test to determine a person's alcohol level is a search subject to Fourth Amendment protections. *State v. Jones*, 279 Kan. 71, 76, 106 P.3d 1 (2005). So when Sperry sought to obtain a breath sample from Cousins to be used as evidence in a criminal investigation, this action triggered Cousins' Fourth Amendment rights. Sperry secured a breath test from Cousins without a warrant. A warrantless government search is per se unreasonable unless it falls within a recognized exception to the warrant requirement; those exceptions include consent and search incident to lawful arrest. *State v. Neighbors*, 299 Kan. 234, 239, 328 P.3d 1081 (2014).

*Search incident to lawful arrest exception to the warrant requirement*

The State argues on appeal that Cousins' breath test was properly administered as a search incident to arrest. But the State did not make this argument in district court. Generally, an appellate court does not consider issues not raised before the district court. *State v. Kelly*, 298 Kan. 965, 971, 318 P.3d 987 (2014). At the hearing on the motion to suppress, the prosecutor stipulated "that the only issue is the voluntariness of the evidentiary breath test because of the DC-70 notices that were given." By so stipulating, the State represented that whether this was a proper warrantless search incident to arrest

was not before the district court. Thus, we will not consider the State's appellate argument that the breath test was proper as a search incident to arrest.

The record does not reflect *why* the State stipulated in district court that the only issue was the voluntariness of Cousins' consent to the breath test based on the DC-70 notices. In *Birchfield v. North Dakota*, 579 U.S. ___, 136 S. Ct. 2160, 195 L. Ed. 2d 560 (2016), the United States Supreme Court held that the Fourth Amendment permits warrantless breath tests incident to arrests for drunk drivers but not warrantless blood tests. 136 S. Ct. at 2184-85. The search incident to a lawful arrest exception to the warrant requirement is applied categorically, rather than on a case-by-case basis. 136 S. Ct. at 2176. There does not appear to be any dispute that Sperry had probable cause and lawfully arrested Cousins for DUI. Had the State tried to introduce the evidence of Cousins' breath test results under the search incident to arrest exception to the warrant requirement, then Cousins' consent to the test and the language of the implied consent advisories would not have mattered on whether the results were admissible. See K.S.A. 2019 Supp. 8-1001(e). But we agree with Cousins that the State waived any argument on the search incident to arrest exception and we will not consider the issue on appeal.

*Consent exception to the warrant requirement*

Turning to the motion to suppress the breath test results based on lack of consent, the State bears the burden to prove that a consent to search was voluntary. *State v. Thompson*, 284 Kan. 763, 776, 166 P.3d 1015 (2007). Generally, a valid consent requires: (1) clear and positive testimony that the consent was unequivocal, specific, and freely given, and (2) the absence of duress or coercion, express or implied. 284 Kan. at 776. Although the voluntariness of a consent to a search is usually a question of fact to be reviewed for substantial competent evidence, whether consent is voluntary is a question of law when the facts are undisputed. *Jones*, 279 Kan. at 77.

8

Kansas' implied consent statute, K.S.A. 2019 Supp. 8-1001, provides a mechanism for obtaining consent during a DUI investigation, and Sperry followed this procedure in seeking Cousins' consent to submit to a breath test. At the time of Cousins' DUI arrest, K.S.A. 2017 Supp. 8-1001(a) provided that any person who operates or attempts to operate a motor vehicle in Kansas "is deemed to have given consent, subject to the provisions of this article, to submit to one or more tests of the person's blood, breath, urine or other bodily substance to determine the presence of alcohol or drugs." Effective July 1, 2018, about three and a half months after Cousins' DUI arrest, the statute was amended to read that any person who operates or attempts to operate a motor vehicle in Kansas "*may be requested*, subject to the provisions of this article, to submit to one or more tests of the person's blood, breath, urine or other bodily substance to determine the presence of alcohol or drugs." (Emphasis added.) See K.S.A. 2018 Supp. 8-1001(a).

Likewise, at the time of Cousins' DUI arrest, K.S.A. 2017 Supp. 8-1001(k)(1) provided that before an officer can administer testing, the officer must give oral and written notice that "Kansas law *requires* the person to submit to and complete [testing] to determine if the person is under the influence of alcohol or drugs, or both." (Emphasis added.) K.S.A. 2017 Supp. 8-1001(k)(7) provided that before an officer can administer testing, the officer must give oral and written notice that "refusal to submit to testing may be used against the person at any [DUI] trial."

Effective July 1, 2018, the advisory that was found at K.S.A. 2017 Supp. 8-1001(k)(1) was eliminated from the notices an officer must give to a driver before asking for consent for breath testing. See K.S.A. 2018 Supp. 8-1001(c). As a result of the statutory changes, the current DC-70 for breath testing no longer includes a notice that Kansas law "requires" the person to submit to testing. But the current DC-70 for breath testing still contains a notice to drivers that refusal to submit to testing may be used as evidence in a DUI trial. See K.S.A. 2019 Supp. 8-1001(c)(4); Kansas Department of Health and Environment DC-70 (Rev. 07/19).

9

*Telling Cousins that he was required to submit to testing*

In *Ryce I,* our Supreme Court held that "when an officer requests a search based solely on having deemed that the driver had impliedly consented to the search, the driver has a right grounded in the Fourth Amendment to refuse to submit." 303 Kan. at 944. Cousins argues that under the holding in *Ryce I*, the advisory that "Kansas law (K.S.A. 8-1001) *requires* you to submit to and complete one or more tests of breath, blood or urine to determine if you are under the influence of alcohol or drugs or both" is a misstatement of the law. (Emphasis added.) He contends that a person cannot be required to do something that he or she has a constitutional right to refuse to do.

The voluntariness of a person's consent is determined from the totality of the circumstances, but knowledge of the right to refuse consent is one factor to be considered. *State v. Nece*, 303 Kan. 888, 893, 367 P.3d 1260 (2016) (*Nece I*), *aff'd on reh'g* 306 Kan 679, 396 P.3d 709 (2017) (*Nece II*). A person's consent to alcohol testing may be involuntary if "*it was obtained by means of an inaccurate, and therefore coercive, advisement.*" (Emphasis added.) *Nece I*, 303 Kan. at 897.

Other than the general discussion of the law in *Ryce I* and *Nece I*, neither party cited a case in their briefs that we consider directly on point to the issue Cousins raises in this appeal. But after briefing was completed, this court considered the argument that telling a driver that Kansas law "requires" the driver to submit to testing is inaccurate and unduly coercive in *State v. Homolka*, No. 121,904, 2020 WL 3885698, at *3-4 (Kan. App. 2020) (unpublished opinion). In that case, Kansas state troopers encountered Robert Homolka while investigating a hit-and-run accident possibly involving a drunk driver. One of the troopers asked Homolka if he would submit to blood testing, and he agreed. As happened to Cousins, the trooper gave Homolka the DC-70 advisories, which contained the language that "'Kansas law (K.S.A. 8-1001) requires you' to submit to the testing." 2020 WL 3885698, at *1. Homolka agreed to the blood test. After the State

10

charged Homolka with DUI, he moved to suppress the test results, arguing that his consent was involuntary.

The district court found, among other things, that "[b]ecause the trooper told Homolka that Kansas law 'required' him to submit to testing, the consent was coerced." 2020 WL 3885698, at *2. In the interlocutory appeal by the State, this court noted:

> "In so finding, the district court relied on how *State v. Edgar*, 296 Kan. 513, 294 P.3d 251 (2013), and *City of Lenexa v. Gross*, No. 96,367, 2007 WL 2043580 (Kan. App. 2007) (unpublished opinion), differentiated between the words 'required' and 'requested.' In *Gross*, 2007 WL 2043580, at *4, a panel of our court held that telling a driver she was '"required by law"' to take a preliminary breath test, despite the fact refusal was an option, was coercive. In *Edgar*, again involving a PBT, the officer incorrectly told Edgar he had no right to refuse a PBT. Our Supreme Court found the misstatement of the law 'transformed the [request for a PBT] into an involuntary search' because the driver would understand he had no choice. 296 Kan. at 530.
>
> "Here, Homolka argued, and the district court agreed, the language of the implied consent advisory . . . informing a driver that he or she is required to submit to a blood test was coercive based on *Edgar* and *Gross*. 'Required,' in the opinion of the district court, did not represent choice, while 'requested' did. Thus, the language of the DC-70 was coercive because Homolka consented after being told he was required to consent to the test." 2020 WL 3885698, at *3.

The State argued in *Homolka*, as it does here and as the district court found here, that using the word "requires" was not coercive because the DC-70 also relates the civil consequences of a driver's license suspension by refusing to submit, thereby suggesting that test refusal is an option. 2020 WL 3885698, at *3. But as the *Homolka* court noted:

> "No Kansas law requires a DUI suspect to submit to a blood draw. To the contrary, a defendant has a constitutional right not to submit to testing without a warrant commanding it, and the right to refuse a test is a 'fundamental Fourth Amendment right.' *Ryce I*, 303 Kan. at 951. Our Supreme Court recognized the implied consent advisory

11

misstated the law by stating Kansas law requires a person submit to testing. 'Significantly, while the statutory implied consent advisory informs the driver he or she is required to take a blood alcohol content test or face consequences, K.S.A. 2016 Supp. 8-1001(k), an officer can only "request" that a driver submit to a test, K.S.A. 2016 Supp. 8-1001 (b), (c).' *Ryce II*, 306 Kan. at 695.

"In *Ryce II*, our Supreme Court reiterated that consent is not voluntary if it was obtained '"by means of an inaccurate, and therefore coercive, advisement."' 306 Kan. at 687. Because K.S.A. 2017 Supp. 8-1001 does not require a person to submit to a test, the trooper misstated the law when he told Homolka that Homolka was required to submit to a blood test. Under the totality of the circumstances, the district court did not err by considering the coercive effect of telling Homolka he was 'required' to submit to testing." 2020 WL 3885698, at *4.

In two opinions filed one week after the opinion in *Homolka* was filed, this court considered the argument that telling a driver that he or she is required to submit to testing is inaccurate and unduly coercive in the context of an administrative driver's license suspension case. In *Sandate v. Kansas Dept. of Revenue*, 58 Kan. App. 2d 450, 463, 471 P.3d 700 (2020), a case addressing the 2016 version of K.S.A. 8-1001, this court held that a DC-70 that states Kansas law "requires" a driver to submit to testing, when considered in context with the remaining provisions of the form, "makes it clear that a driver's choice to submit to testing under the implied consent framework is voluntary." See also *Fisher v. Kansas Dept. of Revenue*, 58 Kan. App. 2d 421, 428-29, 471 P.3d 710 (2020) (same analysis and holding). In both *Sandate* and *Fisher*, this court upheld the administrative suspension of a driver's license even though the DC-70 used in each case stated that Kansas law requires drivers to submit to testing. *Sandate*, 58 Kan. App. 2d at 462-63; *Fisher*, 58 Kan. App. 2d at 428-30.

There are fundamental differences between an administrative driver's license suspension case and a criminal case. In a driver's license suspension case, "substantial compliance" with statutory notice provisions is usually sufficient. *Barnhart v. Kansas Dept. of Revenue*, 243 Kan. 209, 213, 755 P.2d 1337 (1988). The statutes governing

12

driver's license suspension proceedings are remedial in nature and "shall be liberally construed to promote public health, safety and welfare." K.S.A. 2019 Supp. 8-1001(u). But here we are not concerned with whether Cousins can maintain his driving privileges. We are concerned with Cousins' Fourth Amendment right in a criminal proceeding and whether he voluntarily waived the warrant requirement by consenting to a breath test. On the precise issue before us in Cousins' case, *Homolka* is the more instructive precedent.

We agree with the *Homolka* court that an implied consent advisory telling a driver that Kansas law "requires" drivers to submit to testing is an inaccurate statement of the law. To the contrary, a driver has a fundamental Fourth Amendment right not to submit to testing without a warrant commanding it. When the only basis for admitting test results into evidence is the person's consent to testing, the Fourth Amendment requires that consent to be voluntary. Consent is not voluntary if it was obtained by means of an inaccurate, and therefore coercive, advisement. *Nece I*, 303 Kan. at 897; *Homolka*, 2020 WL 38856989, at *3-4.

There is more at stake here than whether Cousins can maintain his driving privileges. To paraphrase this court's reasoning in *Homolka*, had Sperry begun his effort to obtain consent to search Cousins' home or car by advising him that Kansas law required him to submit to the search, we would almost certainly view that statement as being unduly coercive. See 2020 WL 3885698, at *5. We see no significant difference for purposes of Fourth Amendment analysis between that example and the facts here. Under the totality of the circumstances, based on this inaccurate and coercive advisory, we find that Cousins' consent to the breath test was involuntary and the breath test violated his Fourth Amendment rights. The district court erred by holding otherwise. As a result, we need not reach Cousins' additional claim that the advisory that refusal to submit to testing may be used as evidence at trial was inaccurate and coercive.

13

*The Good-Faith Exception*

The State argues that if this court finds that Cousins' breath test was obtained without valid consent, the good-faith exception to the exclusionary rule applies to allow the admission of the breath test results. Cousins disagrees.

The State raised the good-faith issue in district court and both parties argued their respective positions on whether the exception applied to Cousins' case, but the district court did not reach the issue because it found that Cousins' consent to the breath test was voluntary. Both parties have repeated their arguments on appeal. There is no factual dispute here as the relevant facts were stipulated in district court. At the hearing on the motion to suppress, the only evidence before the district court was the DC-70 form admitted as an exhibit. Cousins made no claim that his consent to the breath test was involuntary except for the language in the DC-70. This court is in the same position to view the stipulated evidence as the district court, and neither party argues there is any reason to remand the case to the district court to resolve this issue. Whether the good-faith exception applies to given facts is a question of law over which an appellate court has unlimited review. *State v. Schmidt*, 53 Kan. App. 2d 225, 234, 385 P.3d 936 (2016).

Neither the Fourth Amendment to the United States Constitution nor § 15 of the Kansas Constitution Bill of Rights expressly prohibits the use of evidence obtained in violation of their respective provisions. Instead, to supplement the bare text of the Fourth Amendment, the United States Supreme Court created the exclusionary rule as a deterrent barring the introduction of evidence obtained in violation of the Fourth Amendment in criminal prosecutions. See *Weeks v. United States*, 232 U.S. 383, 34 S. Ct. 341, 58 L. Ed. 652 (1914) (recognizing exclusionary rule in criminal prosecutions in federal court); see also *Mapp v. Ohio*, 367 U.S. 643, 81 S. Ct. 1684, 6 L. Ed. 2d 1081 (1961) (applying exclusionary rule in state court prosecution through the Fourteenth Amendment).

14

The purpose of the exclusionary rule is to protect Fourth Amendment rights through deterrence, but it is not a personal constitutional right of a defendant. *United States v. Leon*, 468 U.S. 897, 906, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984). The United States Supreme Court first recognized the good-faith exception to the exclusionary rule in *Leon*, when the Court found that if law enforcement obtains evidence relying on a warrant later found to be invalid, the evidence should not be excluded. 468 U.S. at 920-21. The United States Supreme Court extended the *Leon* good-faith exception to the exclusionary rule to include reasonable reliance by law enforcement upon a statute, even if the statute is later found to be unconstitutional. *Illinois v. Krull*, 480 U.S. 340, 349-50, 107 S. Ct. 1160, 94 L. Ed. 2d 364 (1987).

The Kansas Supreme Court adopted *Krull's* expansion of the *Leon* good-faith exception to excuse a police officer's reasonable reliance on a statute in *State v. Daniel*, 291 Kan. 490, 500, 242 P.3d 1186 (2010). In *Daniel*, police arrested Cody S. Daniel and searched her car under K.S.A. 22-2501(c), which, at the time, allowed a search of a person's car incident to an arrest. Later, after Daniel appealed her conviction, K.S.A. 22-2501(c) was found to be unconstitutional in *Arizona v. Gant*, 556 U.S. 332, 344, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009). But even though the search of Daniel's car was unconstitutional, our Supreme Court found the officer's reliance on K.S.A. 22-2501(c) was reasonable because of pre-*Gant* caselaw which supported such searches and affirmed the district court's denial of the motion to suppress. *Daniel*, 291 Kan. at 505.

Noting that the good-faith exception is not unlimited, the *Daniel* court echoed the United States Supreme Court's admonition in *Krull* that for the good-faith exception to apply, an officer's reliance on a statute must be objectively reasonable. *Daniel*, 291 Kan. at 500 (citing *Krull*, 480 U.S. at 355). Reliance on a statute is not objectively reasonable if the Legislature "'wholly abandoned its responsibility to enact constitutional laws'" when passing the statute. 291 Kan. at 500 (quoting *Krull*, 480 U.S. at 355).

15

Returning to Cousins' case, both parties agree that *State v. Perkins*, 310 Kan. 764, 769-71, 449 P.3d 756 (2019), is important for our consideration because that case applied the good-faith exception to admit evidence of a breath test after consent to the test was found to be involuntary based on language in a DC-70. The *Perkins* court discussed *Daniel* and found that it was analogous to the facts in that case:

"Similarly, here, there was no reason for the officer to know that K.S.A. 2012 Supp. 8-1025 would later be found unconstitutional or that the implied consent advisory based on that law was coercive. The LEO followed the law as it existed at that time and could not reasonably be expected to know that the statute later would be found unconstitutional. Nor did the Legislature wholly abandon its duty to pass constitutional laws, as argued by Perkins. We have held that the provisions in K.S.A. 8-1025 which criminalized test refusal were unconstitutional, but we have not invalidated the entire implied consent statutory scheme. Perkins' arguments to this effect are unavailing, and we find that the good-faith exception to the exclusionary rule would save the evidence in this case even though Perkins' consent to search was invalid." 310 Kan. at 770-71.

The State argues that Sperry, like the officer in *Perkins*, gave the current DC-70 notices, so suppressing Cousins' breath test results would not deter police misconduct. Cousins argues that *Perkins* was wrongly decided because it misinterpreted United States Supreme Court caselaw. But this court is bound by Kansas Supreme Court precedent unless there is some indication that the court is departing from its earlier position, and here there is not. See *State v. Hayes*, 57 Kan. App. 2d 895, 910, 462 P.3d 1195 (2020).

The thrust of Cousins argument on the good-faith issue is that, based on *Ryce I* and *Nece I*, a reasonable law enforcement officer should have known that the DC-70 used at Cousins' arrest was invalid. In *Ryce I*, the court held that K.S.A. 2014 Supp. 8-1025, which imposed criminal penalties upon a motorist for refusing to submit to any method of blood-alcohol testing, was facially unconstitutional because the statute was not narrowly tailored to serve a compelling state interest. 303 Kan. at 963. In *Nece I*, the court held that

16

a driver's consent to a breath test premised on the threat of criminal prosecution under K.S.A. 2014 Supp. 8-1025 for test refusal was unduly coerced because the State could not have constitutionally imposed criminal penalties for a test refusal. 303 Kan. at 889. But the implied consent notices in the version of the DC-70 Sperry provided to Cousins had no provision that advised him it was a crime to refuse to submit to testing, and it cannot be said that our Supreme Court's holdings in *Ryce I* and *Nece I* control the outcome of Cousins' case.

Before this court's 2020 decision in *Homolka*, we are aware of no Kansas appellate court case that had ruled that the language in the DC-70 that Kansas law "requires" a driver to submit to testing is inaccurate and unduly coercive. The law on this issue is unsettled in Kansas with no Kansas Supreme Court decision directly on point. As a result, a reasonable law enforcement officer would not have known that the DC-70 used at Cousins' arrest was invalid based on *Ryce I* and *Nece I*. Finally, we note that the *Homolka* court declined to apply the good-faith exception but only because the trooper testified at the suppression hearing and the district court found his testimony to be "inaccurate and evasive." 2020 WL 3885698, at *6. We do not have facts like that in Cousins' case.

In sum, the good-faith exception applies. Sperry read Cousins the DC-70 and gave the implied consent advisories as they were statutorily worded at the time of the arrest. See K.S.A. 2017 Supp. 8-1001(k). Sperry's reliance on the statute was objectively reasonable. When Sperry read the implied consent advisories to Cousins, he was only doing what he was required by law to do. Cousins makes no claim that the Legislature abandoned its responsibility to enact constitutional laws when passing the statute in question. Suppressing Cousins' breath test results would not serve the purpose of the exclusionary rule, which is to deter police misconduct. Thus, while the district court erred in finding that Cousins' consent to the breath test was voluntary under the totality of the circumstances, we uphold the district court's decision to deny Cousins' motion to suppress

17

the evidence. See *State v. Overman*, 301 Kan. 704, 712, 348 P.3d 516 (2015) (finding district court's decision will be upheld if it is correct for any reason).

## IS K.S.A. 2019 SUPP. 8-1001(N) UNCONSTITUTIONAL?

In his second issue, Cousins claims the statutory provision allowing test refusal evidence to be used against a driver in a DUI trial is unconstitutional. See K.S.A. 2019 Supp. 8-1001(n). The State disagrees. But this court will not reach the merits of Cousins' constitutional claim because he lacks standing to make it.

"The requirement that a party have standing is a component of subject matter jurisdiction, which may be raised at any time, including upon the court's own motion. Jurisdiction may not be waived. Standing is a question of law subject to unlimited review. [Citations omitted.]" *Creecy v. Kansas Dept. of Revenue*, 310 Kan. 454, 459-60, 447 P.3d 959 (2019). To challenge the constitutionality of a statute,

> "a person must 'show a cognizable injury and establish a causal connection between the injury and the challenged conduct.' In order to show a cognizable injury, '"a party must establish a personal interest in a court's decision and that he or she personally suffers some actual or threatened injury as a result of the challenged conduct."' [Citations omitted.]" 310 Kan. at 461.

Here, the evidence is undisputed that Cousins submitted to taking the breath test; he did not refuse the test. Thus, no test refusal evidence was used against him at a later trial. Cousins was not injured by application of the statutory provision, so he lacks standing to challenge its constitutionality and this court lacks jurisdiction to consider the issue in this appeal. We dismiss Cousins' claim for lack of jurisdiction.

Affirmed in part and dismissed in part.